# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8327 | **DATE** | 5/22/2003 |
| **CASE TITLE** | Central States, et al. vs. Brumm | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order granting plaintiffs' motion to strike defendant's jury demand. Discovery is ordered closed on 8/29/03. Pretrial order will be due by 9/30/03. Trial set for 11/3/03 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | MAY 2 3 2003 date docketed | |
| | Notified counsel by telephone. | | | 20 |
| | Docketing to mail notices. | FILED FOR DOCKETING | docketing deputy initials | |
| | Mail AO 450 form. | 03 MAY 22 PM 6: 47 | 5/22/2003 date mailed notice | |
| | Copy to judge/magistrate judge. | CLERK U.S. DISTRICT COURT | MPJ mailing deputy initials | |
| MPJ | courtroom deputy's initials | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
MAY 2 3 2003

CENTRAL STATES, SOUTHEAST AND )
SOUTHWEST AREAS PENSION FUND, and )
HOWARD McDOUGALL, trustee, )
)
        Plaintiffs, )
)   No. 02 C 8327
v. )
)
DONNA L. BRUMM, )
)
        Defendant. )
)

## MEMORANDUM OPINION AND ORDER

Plaintiffs Central States, Southeast and Southwest Areas Pension Fund, and Howard McDougall (collectively "Central States") sued defendant Donna L. Brumm to collect withdrawal liability payments under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461. Ms. Brumm filed a jury demand, which Central States now moves to strike. I grant the motion to strike.

Central States alleges that Ms. Brumm personally owned and operated an unincorporated real estate business (the "Real Estate Business"). (Compl. ¶ 9.) Ms. Brumm also owned 100% of the stock of a corporation known as Blouin Cartage, Inc. ("Blouin Cartage"). (Compl. ¶ 10.) Blouin Cartage was allegedly bound by a collective bargaining agreement under which it was required to make contributions on behalf of certain of its employees to the Central States pension fund (the "Fund"), a multiemployer pension fund



under ERISA. (Compl. ¶¶ 4, 13.) Central States claims that based on the common control of the Real Estate Business and Blouin Cartage (collectively the "Controlled Group"), the Controlled Group was a single employer under ERISA for the purposes of determining withdrawal liability.[1] (Compl. ¶¶ 11-12). The Fund determined that the Controlled Group effected a "complete withdrawal" from the Fund under 29 U.S.C. § 1383, and Central States claims that as a result, all members of the Controlled Group became jointly and severally liable for withdrawal liability in the amount of $470,278.96. (Compl. ¶¶ 14-15.)

ERISA provides that any dispute between an employer and a plan sponsor regarding withdrawal liability "shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1). Central States' amended complaint alleges that the Controlled Group did not timely initiate arbitration proceedings, and the withdrawal liability demanded is thus due and owing immediately. (Am. Compl. ¶ 18) (citing 29 U.S.C. § 1401(b)(1) ("If no arbitration proceeding has been initiated ... the amounts demanded by the plan sponsor ... shall be due and owing."). Section 1401(b)(1) permits a fund to bring an action for collection of this due and owing withdrawal liability

---

[1] For a general explanation of withdrawal liability, which the Seventh Circuit has called "extremely complex," see *Peick v. Pension Benefits Guaranty Corp.*, 724 F.2d 1247, 1255-56 (7th Cir. 1983).

2

when no arbitration proceeding has been initiated.[2] *See also Cent. States, Southeast & Southwest Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1372 (7th Cir. 1992) ("Should the employer fail to request arbitration within the deadline the amount of withdrawal liability assessed by the plan becomes due and owing and the plan can (as here) sue to collect it.")(citing 29 U.S.C. § 1401(b)(1)).

The Seventh Amendment provides for jury trials in "[s]uits at common law, where the value in controversy shall exceed twenty dollars." U.S. Const. amend. VII. As the Supreme Court has noted,

> Although the thrust of the Amendment was to preserve the right to jury trial as it existed in 1791, the Seventh Amendment also applies to actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty.

*Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41-42 (1989) (internal quotations omitted). To determine whether a statutory cause of action is analogous to a traditional common law cause of action, I engage in a two-part inquiry. "First, [I] compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, [I] examine the remedy sought and determine whether it is legal or equitable in nature." *Id.* at 42 (internal quotations

---

[2] Central States also claims to be bringing this suit under 29 U.S.C. § 1132(a)(3) (permitting a plan fiduciary to bring a civil action to enjoin violations of ERISA or to obtain "other appropriate equitable relief") and 29 U.S.C. § 1451(a)(1) (permitting a plan fiduciary adversely affected by any act or omission with respect to a multiemployer plan to bring an action "for appropriate legal or equitable relief, or both").

3

omitted). However, even if on balance these two factors indicate that an action to enforce statutory rights is analogous to a traditional common law legal claim, if the statutory claim asserts a "public right," then the Seventh Amendment does not entitle parties to a jury trial if Congress has assigned its adjudication to an administrative agency or specialized court of equity. *Id.* at 42 and n.4. *See also Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n,* 430 U.S. 442, 455 (1977) ("[W]hen Congress creates new statutory 'public rights,' it may assign their adjudication to an administrative agency ... without violating the Seventh Amendment's injunction that jury trial is to be 'preserved' in 'suits at common law.'").

It is well established that the ERISA provision requiring mandatory arbitration of withdrawal liability disputes does not violate the Seventh Amendment right to a jury trial because entitlement to withdrawal liability is a public right whose adjudication is delegable to non-judicial fora under *Atlas Roofing*. *Peick v. Pension Benefits Guar. Corp.,* 724 F.2d 1247, 1277 (7th Cir. 1983). *See also Keith Fulton & Sons, Inc. v. New England Teamsters & Trucking Indus. Pension Fund,* 762 F.2d 1124, 1131-32 (1st Cir. 1984) (citing *Atlas Roofing* and finding that mandatory arbitration provision does not violate Seventh Amendment); *Terson Co. v. Bakery Drivers & Salesmen Local 194,* 739 F.2d 118, 121 (3d Cir. 1984) (same); *Bd. of Trs. of W. Conference of Teamsters*

4

*Pension Fund v. Thompson Bldg. Materials, Inc.*, 749 F.2d 1396, 1404 (9th Cir. 1984) (same); *Connors v. Ryan's Coal Co., Inc.*, 923 F.2d 1461, 1465-66 (11th Cir. 1991) (same); *Wash. Star Co. v. Int'l Typographical Union Negotiated Pension Plan*, 729 F.2d 1501, 1511 (D.C. Cir. 1984) (same). While the issue here is not the constitutionality of the mandatory arbitration provision, it cannot be the case that an employer has no right to have a jury decide disputes concerning the determination of withdrawal liability (because such disputes are properly assigned to arbitration), but does have the right to a jury in suits to collect withdrawal liability when the employer has essentially defaulted by not initiating arbitration.

Ms. Brumm points to *Slotky* in an attempt to highlight the difference between the circuit court cases such as *Peick* upholding the mandatory arbitration provision and the present case. *Slotky* was a case in a similar procedural posture to this one. In that case, the defendant was allegedly part of a group under common control, such that he incurred withdrawal liability when another part of the group withdrew from a pension fund. 956 F.2d at 1372. After the defendant failed to initiate arbitration, the pension fund sued to collect the due and owing withdrawal liability. The Seventh Circuit held that defendant must be allowed to contest in the district court his membership in the common control group, noting that "the issue of membership in a controlled group cannot

5

be within *exclusive* arbitral jurisdiction." *Id.* at 1373 (emphasis in original). Ms. Brumm reads *Slotky* as indicating that Congress has not assigned resolution of control group membership to non-judicial fora, and resolution of such disputes therefore retains an entitlement to a jury. *See Curtis v. Loether,* 415 U.S. 189, 195 (1974) (noting that while Congress may assign adjudication of statutory rights to non-judicial fora, where it has not done so (and the right is of a sort typically enforced through an action at law), a jury trial must be available). This reading is too broad. *Slotky* simply held that in certain limited situations (the court expressly declined to determine the exact limits), an employer does not waive his right to contest controlled group membership in court by failing to initiate arbitration. By no means did *Slotky* hold that Congress had not assigned adjudication of controlled group membership to arbitration. Nor did *Slotky* hold that in those cases in which employers are permitted to contest controlled group membership in the district court those employers are entitled to a jury trial. *Slotky* simply cannot be read to endorse the result sought by Ms. Brumm: that an employer does not have a right to a jury to decide withdrawal liability disputes when arbitration is initiated, but that an employer does have a right to a jury when it fails to initiate arbitration and must defend the collection action in court.

6

Ms. Brumm cites *Central States, Southeast & Southwest Areas Pension Fund v. Fulkerson*, No. 99 C 420, 2001 WL 1516728 (N.D. Ill. Nov. 28, 2001) (Darrah, J.) in support of her argument. In *Fulkerson*, the court held that shareholders of an employer who had allegedly incurred and failed to pay withdrawal liability were entitled to a jury trial. While *Fulkerson* dealt with the identical issue before me, I respectfully disagree with its result. *Fulkerson* analogized the action before it to an action seeking to pierce the corporate veil. Finding that piercing the corporate veil is a doctrine that was applied in both courts of law and equity in the 18th century, and that a suit for withdrawal liability was a suit for money damages (and thus a legal action), the *Fulkerson* court held that defendant was entitled to a jury trial. Whether or not the *Fulkerson* court was correct in determining that an action against shareholders for withdrawal liability is analogous to an 18th century common law action,[3] it

---

[3] As enunciated by the Supreme Court, the proper comparison to make is between "the statutory *action* [and] 18th-century *actions*." *Granfinanciera*, 492 U.S. at 42 (emphasis added). Piercing the corporate veil, however, is a doctrine to be applied in an underlying cause of action; it is not an action itself. 1 William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 41.28 (perm. ed., rev. vol. 1999) ("An attempt to pierce the corporate veil is not itself a cause of action but rather is a means of imposing liability on an underlying cause of action, such as a tort or breach of contract.") *See also Turner Murphy Co. v. Specialty Constructors, Inc.*, 659 So. 2d 1242, 1245 (Fla. Dist. Ct. App. 1995) ("Piercing a corporate veil is not itself a cause of action any more than the doctrine of *respondeat superior* is."). Thus, piercing the corporate veil is a doctrine that can be applied in cases where the underlying cause of action

7

failed to discuss the relevance of the Congressional assignment of withdrawal liability disputes to mandatory arbitration. Consequently, I find *Fulkerson* unpersuasive on the issue of the right to a jury in cases seeking unpaid withdrawal liability. *Cf. Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1124 (7th Cir. 1987) (noting that district court decisions are not binding, but merely persuasive, on other district courts). As noted above, it simply cannot be the case that an employer (or shareholder or other alleged member of a controlled group) has no right to a jury when mandatory arbitration is initiated, but does have a right to a jury when no arbitration is initiated and a pension fund brings suit to collect what is essentially a default judgment against the employer.

Plaintiffs' motion to strike the jury demand is GRANTED.

ENTER ORDER:

*Elaine E. Bucklo*
Elaine E. Bucklo
United States District Judge

Dated: May 22, 2003

---

is analogous to 18th century common law claims or in cases where the underlying cause of action is a modern statutory action unlike any 18th century cause of action. The applicability of piercing the corporate veil, or here, controlled group responsibility for withdrawal liability under ERISA, says nothing about whether the underlying cause of action is analogous to any 18th century common law legal actions. Further, at least one circuit court has suggested that actions for withdrawal liability should be classified as equitable (rather than legal) actions because pension funds are trusts, and proceedings involving the administration of trusts have traditionally been considered equitable. *Keith Fulton & Sons*, 762 F.2d at 1132.